UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID ERIC S.,

Plaintiff,

v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,[1]

Defendant.

Case No.:  3:23-cv-2288-GPC-AHG

**REPORT AND RECOMMENDATION RESOLVING JOINT MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**[ECF No. 12]**

Plaintiff David Eric S. ("Plaintiff") filed this action on December 15, 2023, seeking review of the Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits. ECF No. 1. Pursuant to the Court's Scheduling Order, the parties filed a Joint Motion for Judicial Review on July 15, 2024, stating their

---

[1] Carolyn Colvin became the Acting Commissioner of the Social Security Administration on November 30, 2024. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo Kijakazi, this case may properly proceed against Carolyn Colvin pursuant to 42 U.S.C. § 405(g).

positions on the disputed issues in the case. ECF No. 12. The Honorable Gonzalo P. Curiel referred the Joint Motion to the undersigned for a Report and Recommendation.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned **RECOMMENDS** that the Court resolve the Joint Motion in Plaintiff's favor, **REVERSE** the Commissioner's final decision, and **REMAND** this action for the calculation and award of benefits.

## I.    BACKGROUND

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act on August 7, 2020, alleging a disability onset date of October 28, 2019. Certified Administrative Record ("AR") AR 21. The Commissioner denied Plaintiff's claims for benefits upon initial review on January 19, 2021, and again upon reconsideration on April 7, 2021. AR 21. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place telephonically on September 3, 2021. AR 21, 35-57.

On March 16, 2022, the ALJ issued an unfavorable decision denying Plaintiff's current application, finding that although Plaintiff could not perform his past relevant work, he could perform work that exists in significant numbers in the national economy, and had thus not been disabled from his alleged disability onset date through the date of the ALJ's decision. AR 21-34.

Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 1. The Appeals Council denied Plaintiff's request for review on October 11, 2023. AR 1. Plaintiff timely appealed the denial to this Court for judicial review on December 15, 2023. ECF No. 1; 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d at 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.    SUMMARY OF ALJ'S FINDINGS

#### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

---

[2] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). The regulations governing Title II disability insurance benefits ("DIB") are located in 20 C.F.R. § 404.1 *et seq.*

3:23-cv-2288-GPC-AHG

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

3:23-cv-2288-GPC-AHG

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520; *Tackett*, 180 F.3d at 1099.

## B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 28, 2019. AR 23. At step two, the ALJ determined that Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, osteoporosis, obesity, and depression. AR 23.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting in particular that he had considered Listings 1.15, 1.16, and 12.04. AR 24-26. The ALJ determined that Plaintiff has mild limitations in understanding, remembering, or applying information; and moderate limitations in interacting with others, concentrating, persisting, and maintaining pace. AR 25-26. The ALJ also determined that Plaintiff has moderate limitations in adapting or managing oneself. AR 26.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by 20 CFR § 404.1567(b) with certain exertional and postural limitations. AR 26-27. Specifically, the ALJ determined that Plaintiff:

> . . . can lift and/or carry twenty pounds occasionally and ten pounds frequently, and he can sit, stand, and walk for six hours each in an eight-hour workday. He can occasionally climb ramps or stairs, but he can never climb ladders, ropes, or scaffolds. In addition, he can occasionally balance, stoop, kneel, crouch, and crawl. He cannot repeatedly operate lower extremity controls with either foot and should avoid concentrated exposure to extreme cold and vibration as well as even moderate exposure to hazards such as

unprotected heights and dangerous moving machinery. He is able to understand, remember, apply, and carry out job instructions that can be learned in one to three months, and he can appropriately interact with supervisors, coworkers, and the public. He should not work in teams or on collaborative tasks, and his interactions with the public should be brief, occasional, and superficial. He can respond appropriately to routine work situations, settings, procedures, supervision, and changes in a routine work situation or setting, and he can appropriately use judgment, make decisions, and ask questions.

AR 26-27.

At step four, the ALJ concluded that Plaintiff is not capable of performing his past relevant work as a Customer Service Supervisor (sedentary) or Customer Service Clerk (sedentary). AR 32. The ALJ reached this conclusion based on the testimony of the vocational expert, who opined during the hearing that the demands of Plaintiff's past relevant work would be precluded by the RFC assigned by the ALJ. AR 32. The ALJ therefore proceeded to step five.

At step five, the ALJ considered that Plaintiff was a "younger individual" as of the alleged disability onset date and Plaintiff has at least a high school education. AR 32. The vocational expert testified that Plaintiff could perform the light exertion jobs of Laundry Folder, Parking Lot Attendant, and Hand Inspector. AR 33. Based on the vocational expert's testimony, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," so therefore Plaintiff was not disabled. AR 33.

## IV.    DISCUSSION

Plaintiff brings two claims of error in the Joint Motion: 1) the ALJ failed to properly analyze Plaintiff's subjective symptom testimony; and 2) the ALJ improperly used activities of daily living to attack Plaintiff's credibility in the subjective symptom analysis. ECF No. 12. As discussed below, the undersigned recommends a finding that the ALJ committed reversible error with respect to the ALJ's evaluation of Plaintiff's testimony and the ALJ's improper usage of activities of daily living to attack Plaintiff's credibility.

### A. The ALJ Erred in His Evaluation of Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in discounting his testimony regarding the severity of his symptoms by using standard boilerplate language that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." AR 28. Defendant contends that the ALJ properly evaluated Plaintiff's symptom testimony based on the record evidence, and provided a sufficient explanation supported by substantial evidence for rejecting Plaintiff's testimony.

### 1. Legal Standard

An ALJ evaluating a claimant's testimony regarding the extent of his symptoms and impairments must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the testimony. *Id.* If that is the case, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[3] "[A]n ALJ may

---

[3] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 404.159. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in

not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### 2. Plaintiff's Testimony

In a Function Report dated September 02, 2020, Plaintiff stated that he suffers from back pain, osteoporosis, fibromyalgia, depression, and bipolar disorder. AR 220. Plaintiff described having trouble standing, sitting, and walking for long periods of time, and experiencing pain. AR 220. He testified as to short-term memory loss, brain fog, confusion, muscle spasms, and speech issues including saying the opposite of what he intended to say or his words "com[ing] out in the wrong order." AR 220. Plaintiff also stated he was depressed—spending days in bed—and that he experienced "anxiety-type symptoms" when around large groups of people. AR 220. Plaintiff reported issues maintaining both his work relationships and his personal hygiene when in the manic phase of his bipolar disorder. AR 220.

Plaintiff further described difficulty in caring for himself. AR 221. He requires reminders from his friends and family to shower. AR 222. He finds it difficult to change his clothes at times and may wear the same clothes all week. AR 221-22. Due to pain and depression, he finds it difficult to cook. AR 222. He recounted grocery shopping but having

---

a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

to leave the store if it became busy. AR 223. After walking fifty yards, Plaintiff needs rest. AR 225. Though Plaintiff admitted he could pay bills, count change, handle a savings account, and use a checkbook, he relies on his landlord to let him know when and how much rent is due. AR 223.

Plaintiff stated that fibromyalgia affects his memory, concentration, and ability to follow instructions and that his bipolar disorder impacts his ability to get along with others. AR 225. Though Plaintiff can follow written instructions "fairly well," he described not following verbal instructions well because he usually forgets the instructions he was told. AR 225. He stated that he did not get along well with authority figures and had been written up for not getting along with others. AR 225.

At a telephonic hearing on September 3, 2021, Plaintiff provided further testimony about his physical conditions. AR 37. When asked whether he needed to rest during the day, Plaintiff confirmed he did so to obtain relief: "Yes, I do throughout the day take rest, naps and just lie down to get some relief . . . between the pain and depression, sometimes I'll be in bed for three/four hours a day." AR 42. Plaintiff also testified he was limited to standing or walking for 20 minutes at a time and that he had trouble bending down or getting back up. AR 42. When asked what impacts his ability to work, Plaintiff responded: "[P]eriodically my muscles just involuntarily jerk . . . like I'm having some type of a spasm. My speech will come out jumbled at times . . . like it's the right words but they're in a different order than what they should be—or I say the complete opposite of what I'm trying to say. An example would be if it's sunny outside. Instead of saying it's a beautiful sunny day, I'll say boy, it's a really cloudy day today." AR 44-45. Plaintiff also described constipation and central apnea as side effects from his medication. AR 43. He also testified: "I go days and days without showering or changing my clothes." AR 50. Plaintiff's housemates or daughter prompt him to take a shower or change clothes. AR 50.

Plaintiff also testified about his bipolar disorder. AR 48. During manic episodes, he is irrational, does not think straight, and experiences problems at work with both his supervisors and other employees. AR 48. At times, Plaintiff utilizes a sleeping aid to help

him sleep following a manic episode; he subsequently feels withdrawn and stays in bed most of the day. AR 49. When asked whether there were any interests or hobbies that he used to have that he no longer has, he responded: "I used to try to do a little bit of painting and some sketching and reading . . . but I can't get motivated to do anything anymore." AR 49. Plaintiff explained that due to agoraphobia he attended church services likely only once over the past year, even though he used to attend more regularly. AR 49-50.

Plaintiff also stated he had difficulty concentrating, paying attention, staying focused, and retaining short-term memory. AR 42. Plaintiff testified that he had to stop receiving electroconvulsive therapy ("ECT") treatment because "it was affecting my memory even worse than what it [had] been before . . . I couldn't remember seeing people, you know, after I had the ECT. They'd say that they saw me out somewhere and I had no idea that I'd seen them or talked to them." AR 43. Plaintiff elaborated: "I'll read two or three pages and then realize I don't even remember what I just read." AR 46. Plaintiff experienced auditory hallucinations, though these subsided with medication. AR 44. When asked if he could perform household chores, Plaintiff stated: "As far as grocery shopping, I have to have someone come and take me to the store because of the agoraphobia. And once I'm there, I can be in the store for maybe 10-15 minutes max before I have to leave. I just get anxiety and it feels like the walls are closing in and I have to get out of there." AR 45-46. He further testified "[I] just pretty much stay at home and either in bed or sometimes sit on the couch watching TV, but I can't really get out very often." AR 46. He went onto explain that: "I can't be in big crowds or at the stores for very long at all without getting anxiety and paranoia." AR 47. He further testified to experiencing panic attacks during which he is short of breath, diaphoretic, and breaks out into a sweat. AR 47.

## I.    The ALJ's Reasons for Rejecting Plaintiff's Testimony

Neither party contests that Plaintiff has the following severe impairments: fibromyalgia, degenerative disc disease, osteoporosis, obesity, and depression. AR 23. Further, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, satisfying the first step of the inquiry. AR 28.

The ALJ also found no evidence of malingering. Therefore, in order to reject Plaintiff's testimony, the ALJ was required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. *Austin v. Saul*, 840 F. App'x 899, 901 (9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)). The undersigned recommends a finding that the ALJ erred in rejecting Plaintiff's testimony because the ALJ did not provide reasons that were clear and convincing nor did the ALJ identify which specific testimony the ALJ believed contradicted the objective medical evidence. *See Trevizo*, 871 F.3d at 679.

### a.  Failure to Identify Inconsistent Testimony

An ALJ is required to "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 28. Courts have found this same language to be too general and boilerplate to satisfy the requirement that an ALJ identify the testimony of the claimant that should be discredited. In *Lambert*, for example, the Ninth Circuit found that identical boilerplate language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that the claimant's statements concerning the intensity, persistence and limiting

> effects of [her] symptoms are not entirely consistent with the objective medical and other evidence in the record for the reasons explained in the decision. But this boilerplate statement by way of introductory remark, which is routinely include[d] in ALJ decisions denying benefits, did not identify what parts of the claimant's testimony were not credible and why.

*Lambert*, 980 F.3d at 1277(internal punctuation omitted); *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this language is that the phrase "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony are claimed to be inconsistent with other evidence in the record. *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision.") (quoting *Treichler*, 775 F.3d at 1103). Plaintiff's testimony is that he has difficulty focusing, remembering things, spending time outside his home, interacting with other people, and being around crowds; he requires assistance from his daughter; he requires reminders to shower and to change his clothes; he experiences pain, involuntary muscle spasms, and difficulty walking or sitting for long periods of time; he experiences mood swings that disturb his relationships with his supervisors and employees; and his prescribed medications present further complications. These symptoms and effects of fibromyalgia, degenerative disk disease, osteoporosis, bipolar, and depression are different and cannot be treated as a unitary complaint. This leaves the Court to attempt to ascertain whether the evidence relied on by the ALJ is inconsistent with any, or all, of these symptoms and effects. That alone is reversible error. *Lambert*, 980 F.3d at 1278.

Further, in the joint motion, Defendant argues that the ALJ adequately articulated reasons to undermine the Plaintiff's symptom allegations. To support this argument, Defense counsel highlighted Plaintiff's ability to engage in activities such as discussing politics. ECF No. 12 at 10. However, defense counsel—not the ALJ—raised this point. Post hoc rationalizations—where defense counsel attempts to fill in the gaps left by the ALJ—are insufficient. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts.") Defendant's impression of the record is not a substitute for the ALJ's interpretation of the facts because the ALJ did not make that finding. *See Gibson v. Comm'r of Soc. Sec. Admin.*, No. 21cv2091-PHX-DWL, 2023 WL 2569536, at *10 (where the Commissioner attempted to provide a post hoc rationale impermissible in the Social Security context). Nonetheless, the Court will address the reasons provided by the ALJ to discredit Plaintiff's testimony generally.

### b. Lack of Clear and Convincing Reasons for Rejecting Physical Symptom Testimony

Plaintiff underwent a physical examination by Dr. Juliane Tran, a consultative examiner, on December 29, 2020. AR 592-99. The ALJ accurately summarized the notes from the examination performed by Dr. Tran. AR 29. However, the ALJ did not link Dr. Tran's findings to specific testimony given by Plaintiff nor did the ALJ highlight contradictions between Dr. Tran's findings and Plaintiff's testimony. For instance, the ALJ emphasized that the notes reflect that Plaintiff had a normal gait and did not require an assistive device. AR 29. The ALJ did not specify, however, how Plaintiff's normal gait and/or ability to live without an assistive device represents grounds for rejecting Plaintiff's subjective symptom testimony that he spends three to four hours a day in bed due to pain and depression, and that his physical impairments cause difficulty standing and sitting for long periods of time. AR 42, 220. An ALJ cannot point to a medical finding of normal gait while ignoring other evidence of mobility limitations. Similarly, the ALJ highlighted that the notes showed that Plaintiff, during the physical examination, was able to heel walk, toe walk, and tandem walk without difficulty. AR 29. However, the ALJ's decision is deficient

because it fails to provide any explanation as to how, or even to what extent, Dr. Tran's opinion regarding Plaintiff's ability to heel walk, toe walk, and tandem walk is inconsistent with Plaintiff's assertions that he can only walk for 20 minutes before needing to rest or spends hours in bed due to pain and depression. AR 42.

The administrative record included repeated subjective complaints by Plaintiff of chronic pain attributed to a back injury, fibromyalgia, and osteoporosis including spending days in bed due to the pain, experiencing a "constant burning sensation" and feeling constant "fibro pain." AR 64, 220, 276-77, 293-94, 302, 443, 445, 448, 450, 615. Plaintiff's providers noted Plaintiff presented with myalgia, exhibited tenderness in both shoulders, both elbows, both wrists, both knees, and in his cervical, thoracic, and lumbar back. AR 615-16, 708. Due to Plaintiff's physical symptoms, providers prescribed long-term opiate therapy and other pain management medications—which Plaintiff took *in addition to* multiple psychiatric medications. AR 282-84, 288, 309-10, 424, 706. Despite the pain levels, increasing the opiate dose was not an option due to guidelines. AR 276. Accordingly, the selective observations that the ALJ noted from Dr. Tran's evaluations do not provide clear and convincing reasons to reject Plaintiff's testimony.

### c. Lack of Clear and Convincing Reasons for Rejecting Mental Symptom Testimony

In the decision, the ALJ summarized the notes from a mental status examination performed by Dr. Adrienne Pasek. AR 29, 581-590. The ALJ pointed out that the notes showed that during the examination, Plaintiff was "pleasant and cooperative with adequate eye contact and appropriate behavior." AR 29. Plaintiff was alert and Plaintiff's mood was consistent with the content of conversations. AR 29.

Although the ALJ accurately summarized Dr. Pasek's evaluation, he failed to explain why Dr. Pasek's evaluation provides a clear and convincing reason for rejecting Plaintiff's testimony. For example, Plaintiff's ability to be pleasant or maintain appropriate behavior during a mental examination is not inconsistent with Plaintiff's testimony as to difficulties struggling with depression, bipolar disorder, panic attacks, and agoraphobia.

The administrative record includes repeated subjective complaints by Plaintiff of severe depression and manic episodes. For example, Plaintiff reported "hyperverbal" communication and "odd behavior" at work, resulting in his suspension, despite Plaintiff having worked in his role for more than a decade. AR 40, 293-94, 300. Plaintiff struggled to get out of bed (spending up to 16-18 hours in bed at times) resulting in missed counseling appointments with his pastor; he struggled to maintain his hygiene or leave the house and reported suicidal ideation (though he denied intent or plan). AR 407-08, 607, 620, 647, 842. Though able to get into a car, Plaintiff experienced anxiety getting out of the car and being in public. AR 608.

Plaintiff's complaints continued into subsequent years. Plaintiff described struggles with depression and agoraphobia, including difficulty going to the grocery store, and claustrophobia being around others, with the "walls closing in" and a desire to isolate himself. AR 828, 842, 941. Upon awaking in the morning, Plaintiff would hear sounds of football games and of paper being dropped, though Plaintiff was alone. AR 618, 647. Plaintiff reported such symptoms despite taking multiple psychiatric medications including Lamital, Venlafaxine, and Buproprion. *See, e.g.,* AR 281, 294, 305, 408, 445, 609, 618, 648, 829, 942. Failing to identify how Dr. Pasek's findings are inconsistent with Plaintiff's symptom testimony runs contrary to the requirement that the ALJ must identify "*which* testimony he [finds] not credible, and . . . *which* evidence contradict[s] that testimony." *Lambert*, 980 F.3d at 1277.

Detracting from the Commissioner's conclusion are Dr. Mistry's clinical psychiatric observations. As early as January 2019 and continuing throughout the year, treatment notes by Dr. Mistry show Plaintiff presented with "increased depression" along with constricted affect, slowed and spontaneous speech, and "difficulties recalling details around recent events." AR 304-08. The following year, Dr. Mistry reported Plaintiff appeared disheveled, unshaven, and unkempt, with psychomotor retardation, a depressed mood, slow and spontaneous speech, and difficulty remembering details. AR 407-08. Subsequently, despite treatment including psychiatric medication, Dr. Mistry described Plaintiff as "struggling

3:23-cv-2288-GPC-AHG

with prominent neurovegetative symptoms of depression" exacerbated by pain, sleep apnea, and fatigue from fibromyalgia and staying "in bed up to 16-18 hours at times," rarely leaving the house, rarely driving, and not attending to self-care. AR 607, 828-830, 941-42. Treatment notes from Plaintiff's physician, Dr. Steinberg, provide that Plaintiff presented with a flat affect, malaise, fatigue, and a review of psychiatric and behavioral systems that are positive for memory loss." AR 707-08, 730-31.

ALJs are not allowed to selectively focus on comments that suggest non-disability but ignore other parts of the record to the contrary. For example, where the ALJ cites that Plaintiff denied experiencing hallucinations, the ALJ ignores in the very same paragraph that "claimant reported auditory hallucinations" (though "these did not meet the criteria of for a thought disorder") along with multiple other notes in the administrative record regarding Plaintiff's testimony as to auditory hallucinations. AR 25, 584-85, 618, 647. Though at times Plaintiff's hallucinations subsided with medication, the ALJ's selective focus amounts to cherry-picking the record, which fails under the law; selectively focusing on comments that suggest non-disability does not amount to substantial evidence for the ALJ's determination that Plaintiff's mental impairments are non-severe. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Significantly, a claimant's impairments "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir. 1985)). *See also Garrison*, 759 F.3d at 1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.")

Adding to this, a review of the jobs that were presented by the vocational expert show potential conflicts between the duties as described such as contact with the public (parking lot attendant) and Plaintiff's difficulties interacting with others including experiencing manic episodes and exhibiting irrational behavior toward others. AR 42, 43, 47, 48, 208, 224, 281. The ALJ also did not resolve potential conflicts with the duties described such as working with dangerous machinery (laundry and hand inspector). The

ALJ was required to properly resolve these issues. *See Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019); *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007).

Notably, Plaintiff's adequate performance on cognitive tests is also not inconsistent with his testimony. *Ghanim*, 763 F.3d at 1164 ("[O]bservations of cognitive functioning during therapy sessions do not contradict [claimant's] reported symptoms of depression and social anxiety."). Further, Dr. Pasek found Plaintiff's "verbal reasoning abilities [] in the low average range," and Plaintiff described not following verbal instructions well because he usually forgets what he was told. AR 225, 586.

Additionally, Dr. Pasek specified "there may be differences between self-reported symptoms and observation made by the clinicians . . . these are due, in part, to the intermittent nature of some symptoms and their variance in expression, based on the environment in which they are elicited." AR 584. Dr. Pasek went onto note that "while undergoing an evaluation, certain individual[s] may conscientiously mask symptoms to maintain appropriate appearance in front of the interviewer." AR 584. The undersigned also believes the ALJ evaluated Dr. Pasek's findings too narrowly by failing to consider how Plaintiff's psychological behavior may differ in a non-clinical setting.

For these reasons, the ALJ's summary of Dr. Pasek's evaluation is not a clear and convincing reason to reject Plaintiff's testimony.

### d. Activities of Daily Living

The ALJ found that Plaintiff "described daily activities that are inconsistent with his allegations of disabling symptoms and limitations." AR 28. These activities are not clear and convincing reasons to reject Plaintiff's testimony because the ALJ fails to draw a connection between the activities and an ability to work at a sustained pace. For example, the ALJ highlighted that Plaintiff admits to cooking for himself, but the ALJ did not specify how this activity contradicts Plaintiff's testimony that he has difficulty concentrating, paying attention, and staying focused. *Bonnie B. v. Saul*, No. 3:20-cv-00653-RBM, 2020 WL 7695332, at *9 (S.D. Cal. Dec. 28, 2020) ("The Court is hard pressed to find the cited

daily activities – that Plaintiff can dress, bathe, and cook for herself – are inconsistent with her symptom testimony and involve functions transferable to a work setting.").

Further, the ALJ cites that Plaintiff "attends to his personal hygiene with some difficulty" and "cares for his dog" as standing in contrast to Plaintiff's allegations of his symptoms. AR 28. Yet nowhere does the ALJ provide why such activities cannot mutually coexist with Plaintiff's testimony that he can "only walk fifty yards before needing to stop and rest for ten to fifteen minutes." AR 28. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error where an ALJ failed to "specifically link the testimony" about the claimant's daily activities to the conclusion that the claimant's testimony lacked credibility).

A careful review of the record further demonstrates that the ALJ is wrong in asserting that Plaintiff described daily activities inconsistent with his allegations. Though the ALJ noted that Plaintiff "goes to church," Plaintiff's testimony sheds light on pertinent information left out of the ALJ's decision. AR 26. During the hearing, the ALJ asked: "It looks like you would attend church services, is that accurate?" to which Plaintiff responded, "I did, yes. I haven't been able to go for probably close to a year now . . . [due to] the agoraphobia, being around people. It's really difficult for me to get out of the house. I have attended once, I believe, over the past year." AR 49-50. Similarly, though the ALJ noted that Plaintiff admitted to "going out shopping," Plaintiff's testimony sheds light on germane information not included in the ALJ's decision. AR 25. The ALJ asked: "Are you able to go grocery shopping?" to which Plaintiff responded, "I have to have someone come and take me to the store because of the agoraphobia. And once I'm there, I can be in the store for maybe 10-15 minutes max before I have to leave. I just get anxiety and it feels like the walls are closing in and I have to get out of there." AR 45-46.

Plaintiff's landlord and housemate, Mr. Gatchell, confirmed Plaintiff rarely, if at all, engaged in some of the listed activities. Mr. Gatchell noticed "a considerable decrease [by Plaintiff] in activity around the house," and that Plaintiff "spends a lot of time in bed." AR 204. Though Plaintiff "used to do household chores, [he] now pays others to complete

[them] for him, due to pain and fatigue." AR 204. Plaintiff "may not eat for days if depressed" and at times requires special reminders to take care of personal grooming, such as when Plaintiff "wears clothes repeatedly for days" and needs a reminder to bathe. AR 204-05. Plaintiff "used to cook most meals at home over the past year" but now prepares food or meals at a "very minimal" rate. AR 205. Plaintiff goes outside "barely once a day" and some days not at all; due to Plaintiff's condition, Plaintiff "is awake at all given hours." AR 204-06. Plaintiff "doesn't socialize" (per Mr. Gatchell's knowledge) and "is very withdrawn from social activities." AR 208. Mr. Gatchell also noted that Plaintiff had panic attacks at the grocery store. AR 209. *See Burrell*, 775 F.3d at 1128 (ALJ's reasoning was insufficient because he failed to explain why claimant's daily activities were inconsistent with being depressed and unable to be around other people).

### B. The ALJ's Error Was Not Harmless

The ALJ erred by rejecting Plaintiff's testimony without providing clear and convincing reasons. If an ALJ's error is harmless, his decision will not be reversed. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Id.* This error was not harmless, because it impacted the RFC formulated by the ALJ. AR 26. The incorporation of the mental and physical limitations of avoiding "concentrated exposure to extreme cold and vibration, and . . . moderate exposure to hazards . . . and work in teams or on collaborative tasks" does not cure the error. If Plaintiff's testimony is credited fully, particularly with respect to his pain and need for rest three to four hours a day, it is highly doubtful that he could work even with those limitations.

The undersigned discusses the appropriate remedy below.

### V.    THE APPROPRIATE REMEDY

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;"

(2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 683 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141.

The first factor weighs in favor of a remand for benefits. The record is sufficiently developed as it includes medical records from Plaintiff's treating providers, multiple physical consultative examinations, and consultative mental examinations. A third-party function report supports Plaintiff's testimony about Plaintiff's limitations. Additionally, the vocational expert did not identify additional jobs outside of the three jobs that aligned to Plaintiff's residual functional capacity. The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony.

The third factor also weighs in favor of a remand for benefits. If Plaintiff's testimony concerning the limiting effects of his physical and mental impairments had been credited, the ALJ could not have issued an RFC finding that Plaintiff has the ability to perform "light work" under 20 CFR § 404.1567(b), which requires "a good deal of walking or standing," including the ability to stand or walk, off and on, for six hours out of an eight-hour work day, and the ability to appropriately interact with supervisors, coworkers, and the public. The Vocational Examiner testified at the hearing that there would be no jobs available if restrictions that are consistent with Plaintiff's testimony, including the need for excessive breaks and an inability to interact appropriately with others, were applied. AR 54.

The requirement to provide specific, clear and convincing reasons for rejecting a plaintiff's symptom testimony has been the standard in the Ninth Circuit for decades. *See Burrell*, 775 F.3d 1136-37 (recounting history of the requirement to show specific, clear and convincing reasons). The ALJ's failure to follow this standard warrants reversal, not a remand that would amount to a second chance to do what was required to be done in the first place. Remanding in this circumstance "would create an unfair 'heads we win; tails,

let's play again' system of disability benefits adjudication" that is unwarranted in light of the record that already exists with respect to Plaintiff's claim for benefits. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Therefore, weighing the applicable factors, the Court finds the appropriate remedy is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VI.    CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) **REVERSING** and **REMANDING** this case for the calculation and award of benefits. ECF No. 12; AR 21-34.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **January 31, 2025**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 7, 2025**.

**IT IS SO ORDERED**.

Dated: January 17, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:23-cv-2288-GPC-AHG