1
2
3
4
5
6
7
8

9                        UNITED STATES DISTRICT COURT

10                      SOUTHERN DISTRICT OF CALIFORNIA

11

12    DAVID ERIC S.,                          Case No.:  3:23-cv-2288-GPC-AHG

13                              Plaintiff,     **ORDER ADOPTING REPORT AND**
                                              **RECOMMENDATION**
14    v.                                       **REMANDING TO THE ALJ**

15    LELAND DUDEK, Acting Commissioner
      of Social Security,[1]
16
                              Defendant.       [ECF Nos. 12, 13]
17

18

19
          On December 15, 2023, Plaintiff David Eric S. ("Plaintiff") filed an application
20
      seeking judicial review of the Commissioner of Social Security's final decision denying
21
      Plaintiff's application for disability insurance benefits.  ECF No. 1.  After careful
22
      consideration of Magistrate Judge Allison H. Goddard's report and recommendation
23
      ("R&R"), the pleadings, the supporting documents, and the applicable law, the Court
24
      **ADOPTS** Judge Goddard's R&R and **REMANDS** this matter for further analysis
25

26    _____

27    [1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 19,
      2025. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo
28    Kijakazi, this case may properly proceed against Leland Dudek pursuant to 42 U.S.C. § 405(g).

                                           1

consistent with this order.

## I.    Background

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act on August 7, 2020, alleging a disability onset date of October 28, 2019.  AR 21.  Plaintiff alleged disability based on osteoporosis, fibromyalgia, speech difficulty, jerking muscles, short-term memory loss, back pain, bipolar disorder, and brain fog/difficulty concentrating.  AR 59.  The Commissioner denied Plaintiff's claims for benefits upon initial review on January 19, 2021, and again upon reconsideration on April 7, 2021.  AR 21.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place telephonically on September 3, 2021, before ALJ Howard K. Treblin.  AR 21, 35, 57.  On March 16, 2022, ALJ Treblin issued a decision denying Plaintiff's claim for benefits, finding that although Plaintiff could not perform his past relevant work, he could perform work that exists in significant numbers in the national economy; thus ALJ Treblin concluded that Plaintiff had not been disabled from this alleged disability onset date through March 16, 2022, the date of the ALJ's decision.  AR 21-34.  Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied Plaintiff's request for review on October 11, 2023.  AR 1.  On December 15, 2023, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision.  ECF No. 1.

### A. Plaintiff's Background & Testimony

Plaintiff was born on September 14, 1970.  AR 167.  Plaintiff worked for Kaiser Permanente for sixteen years—seven years as an appointment center service representative from 2003 to 2010 and nine years as an appointment center supervisor from 2010 to 2019.  AR 214.  He became unable to work due to his disabling condition on October 28, 2019.  AR 167.  Plaintiff claims that he suffers from osteoporosis, fibromyalgia, speech difficulty, muscles jerking, short-term memory loss, back pain, bipolar disorder, and brain fog/difficulty concentrating.  AR 194. He claims that his back pain causes him difficulty in standing, sitting, and walking for long periods and his

fibromyalgia causes body pain, short-term memory loss, brain fog/confusion, muscle jerking, and speech problems.  AR 220.  According to Plaintiff, "sometimes [he] say[s] the complete opposite of what [he] want[s] to say and [his] words can come out in the wrong order."  *Id*.  Further, his personal and work relationships have suffered due to his manic bipolar disorder , and he is unable to get out of bed due to his depression.  *Id*.

Plaintiff lives with his landlord and three other roommates.  *Id*.  On most days, Plaintiff takes care of his dog, prepares his breakfast, takes his medication, and if he feels well, watches TV or attempts to read a book, although Plaintiff notes that reading at times can be overwhelming due to his brain fog.  AR 221.  If Plaintiff is in pain or depressed, however, he will often spend his entire day in bed.  *Id*.  Plaintiff has difficulty keeping proper hygiene as he finds it hard to change clothes and bathe on a regular basis.  *Id*.  His friends and family often have to tell him that he needs to shower.  AR 222.  Plaintiff goes outside about once a day, but sometimes he does not leave the house at all due to his depression.  AR 223.  According to Plaintiff, his quality of life has decreased over the past few years.  AR 227.

At the September 3, 2021 hearing before the ALJ, Plaintiff testified that he is able to lift or carry between 15 and 20 pounds and is able to sit for around 30 minutes before he needs to get up and change positions.  AR 41.  Plaintiff also needs to take naps throughout the day or lie down to "get relief."  AR 42.  At times, Plaintiff will be in bed for three to four hours a day.  *Id*.  As for his bipolar disorder, Plaintiff testified that he gets very "manicky" and has difficulty getting along with his peers.  AR 43.  Plaintiff also has a great deal of anxiety and has agoraphobia as a result, which makes it hard for him to leave the house.  *Id*.  When the ALJ asked Plaintiff what a typical day looks like for him, Plaintiff responded: "I don't get out very, very much. If I do get out, I'll go to a drive through just to grab sometime to eat periodically…I can't get out of the car to go inside to the restaurant but yeah, I just pretty much stay at home and either in bed or sometimes sit on the couch watching TV, but I can't [] really get out very often."  AR 46.  Plaintiff later testified that he has not been able to attend church services in almost a year

due to his agoraphobia and inability to be around other people.  AR 50.

### i.  Lay Testimony from Plaintiff's Landlord, Mark Gatchell

On August 23, 2020, Plaintiff's landlord, Mark Gatchell filed a function report detailing his observations of Plaintiff's symptoms and functional limitations.  AR 203-10. Mr. Gatchell noted that over the past year, Plaintiff had a considerable decrease in activity around the house and instead spends a lot of time in bed, stating that he is depressed and in pain.  AR 204.  Mr. Gatchell also stated that Plaintiff used to complete household chores, but now pays other people to do those for him, due to Plaintiff's pain and fatigue.  *Id*.  He noted that Plaintiff used to shave his head daily, but now lets his hair grow for weeks.  *Id*.  Mr. Gatchell has to remind Plaintiff to change his clothes and take baths, and if he notices that Plaintiff is wearing the same clothes, he will encourage Plaintiff to do his laundry.  AR 205.  Each month, Mr. Gatchell has to remind Plaintiff when rent is due and how much it is.  AR 207.  According to Mr. Gatchell, Plaintiff also does not socialize with others and can be very withdrawn from social activities.  AR 208. As for Plaintiff's physical abilities, Mr. Gatchell noted that Plaintiff struggles with lifting, squatting, bending, standing, walking, sitting, kneeling, talking, climbing stairs, memory, concentration, following instructions, and getting along with others.  *Id*.  In general, Mr. Gatchell reports that he has seen Plaintiff's "overall attitude and zest for life change significantly over the past year or so."  AR 210.

### B.  The Medical Record

### i.  Dr. Todd Steinberg

Dr. Todd Steinberg is Plaintiff's primary care doctor and treating physician.  On October 10, 2017, Dr. Steinberg reported that Plaintiff had several pain flare ups where he spent two days during the week in bed due to increased pain.  AR 450.  Plaintiff generally had calf pains that would wax and wane in intensity spontaneously.  *Id*.  On May 10, 2018, Dr. Steinberg noted that Plaintiff had increased chronic pain over the past two months.  AR 448.  On November 2, 2018, Dr. Steinberg reported that Plaintiff had a "rough couple months" paired with "increased pain."  AR 445.  During this visit, Plaintiff

4

also reported his short-term memory loss for the first time.  *Id*.  On June 20, 2019, Dr. Steinberg noted that Plaintiff was "positive for back pain, myalgias[,] and neck pain." AR 438.  On November 7, 2019, Plaintiff told Dr. Steinberg that his short-term memory lapses were interfering with his work and that his superiors told him to apply for medical disability.  AR 427.

On July 27, 2020, Dr. Steinberg told Plaintiff that while his cognitive symptoms could be due to his fibromyalgia, Plaintiff's chronic opiate use may also play a role.  AR 413.  Dr. Steinberg stated that the only way to determine if Plaintiff's opiate use affected his memory would be to wean off of and cease opiate use entirely.  *Id*.  Plaintiff told Dr. Steinberg that he did not see that as a viable option because he would not be able to tolerate his pain without medication.  *Id*.  On December 11, 2020, Plaintiff told Dr. Steinberg that he was in bed most of the time due to his pain.  AR 615.  On March 25, 2021, Dr. Steinberg reported that Plaintiff had a flat affect and was tender throughout his back and arms. AR 708.  On May 19, 2021, Dr. Steinberg reported that Plaintiff had fatigue, myalgias, and memory loss.  AR 731.  Plaintiff told Dr. Steinberg of two instances where he interacted with people but could not remember the interactions afterwards.  AR 730.

### ii.  Dr. Ha Bich Mistry

Dr. Ha Bich Mistry is Plaintiff's psychiatrist.  On January 29, 2019, Dr. Mistry noted that Plaintiff was struggling with chronic pain, short-term memory loss, difficulty expressing himself verbally, depression, isolation, lack of motivation, and anhedonia. AR 443.  At this visit, Dr. Mistry also noted that Plaintiff had a depressed mood and was positive for psychomotor retardation.  *Id*.  On March 12, 2019, Dr. Mistry noted that Plaintiff's mood was "less dysphoric."  AR 440.  On October 23, 2019, Plaintiff emailed Dr. Mistry describing his most recent manic episode, reporting that he had been suspended from work for "odd behavior" and "realize[d] that [his] manic episode was much worse than [he] could have imagined" after trying to figure out what happened during the episode.  AR 436.  On October 28, 2019, Dr. Mistry noted that Plaintiff would

5

"likely be seeking medical retirement."  AR 431.  At this visit, Plaintiff told Dr. Mistry that he had been suspended from work due to "bizarre behaviors" but had been unaware that he was acting in that manner.  AR 430.  Plaintiff also told Dr. Mistry that he did not feel like he would be able to return to his job because he was struggling to perform his job duties.  *Id*.

On March 26, 2020, Dr. Mistry noted that Plaintiff's mood was mildly dysphoric.  AR 417.  Plaintiff told Dr. Mistry that being at work around his coworkers made his memory and concentration difficulties worse.  *Id*.  On May 5, 2020, Plaintiff reported that his memory was getting worse and that his roommates began telling him that he was forgetting to pay his rent, repeating the same questions, and repeating the same stories.  AR 415.  On August 31, 2020, Plaintiff appeared "disheveled, unshaven, and unkempt" and was depressed.  AR 408.  Plaintiff was on a leave of absence from work due to difficulties with performance, and he stated that he experienced intermittent mood episodes and progressive difficulties with pain and memory.  *Id*.  On November 10, 2020, Dr. Mistry noted that Plaintiff had struggled with "prominent neurovegetative symptoms of depression, exacerbated by pain and fatigue from fibromyalgia."  AR 619.  On February 23, 2021, Plaintiff told Dr. Mistry that he felt overwhelmed easily and stayed in bed for 16 to 18 hours a day.  AR 608.  On April 28, 2021, Plaintiff reported that he was continuing to struggle with his depression and agoraphobia, and that he could only tolerate going to grocery stores for a limited amount of time.  AR 828.  Dr. Mistry noted that Plaintiff was tearful, depressed, and anxious.  *Id*.

### iii.  Dr. Adrienne Pasek

On December 11, 2020, Dr. Adrienne Pasek performed a complete psychological evaluation of Plaintiff for the Department of Social Services, Disability Evaluation Division.  AR 581.  Dr. Pasek observed that Plaintiff's posture and gait were normal, and he was able to enter the room without any assistance.  AR 582.  She noted that Plaintiff does not need support to take care of his personal hygiene, can complete household tasks, and is able to sleep through the night.  AR 584.  With regards to Plaintiff's attitude and

behavior, Dr. Pasek noted that Plaintiff had appropriate behavior, adequate eye contact, and was cooperative. *Id.* Plaintiff was alert and fully conscious throughout the interview, although he was noted to have intellectual functioning "slightly below the mean." *Id.* He had spontaneous and fluent speech, with an adequate verbal response time. *Id.* Dr. Pasek also noted that Plaintiff's mood was appropriate based on the content of the conversation and found that there was no evidence of an active psychotic thought process. *Id.* According to Dr. Pasek, although Plaintiff reported that he suffered from auditory hallucinations, "his description of the experiences did not appear to meet the criteria for a thought disorder." AR 584-85. Plaintiff was coherent throughout the interview and his thoughts were "logically connected with an adequate flow of ideas and no instances of thought derailment." AR 585. Dr. Pasek noted that Plaintiff did have a mildly impaired memory, even though he was still able to recall several relevant details about his life. *Id.* Plaintiff was able to answer hypothetical questions reflecting social norms, knowing the day's date, where he was, and how many months are in a year. *Id.*

Plaintiff underwent several tests, including ten subtests of the Wechsler Adult Intelligence Scale. *Id.* On these tests, Plaintiff scored in the average range. AR 587. However, Dr. Pasek noted that Plaintiff's comprehension abilities were in the low average range. *Id.* According to Dr. Pasek's diagnostic impressions, however, she found that Plaintiff's overall cognitive ability falls in the average range. AR 588. Dr. Pasek concluded that Plaintiff's "allegations do not appear to be substantiated for mental health disorder." AR 589. In general, according to Dr. Pasek, Plaintiff "demonstrates no impairment to understand, remember[,] and carry out short and simplistic, and visually based, instructions" and "presents with no impairment to understand, remember, and carry out complex and detailed, and visually based instructions." *Id.* Dr. Pasek thus concluded that Plaintiff "demonstrates no impairment in handling complex work-related decisions," "would be able to interact appropriately with supervisors, coworkers, and peers," and "has no impairment to maintain attendance and complete an eight-hour workday in a regular workplace setting." *Id.*

####    iv.  Dr. Juliane Tran

On December 29, 2020, Dr. Juliane Tran, a consultative examiner, performed a comprehensive orthopedic exam evaluation of Plaintiff.  AR 593.  Dr. Tran observed that Plaintiff is appropriately dressed, can walk without an assistive device, and has a normal gait.  AR 594.  She noted that Plaintiff "can do toe walking, heel walking, and tandem walking without difficulty."  *Id.*  When measuring Plaintiff's range of motion, Dr. Tran noted that movement and flexion of Plaintiff's lumbar region was limited by pain.  AR 595.  Further, Dr. Tran concluded that "simultaneous lumbar lateral tilt and extension produce significant back pain."  *Id.*  Dr. Tran noted that Plaintiff's bilateral knee exam demonstrated mild tenderness.  AR 596.  Based on her overall assessment, Dr. Tran concluded that Plaintiff: (1) could occasionally lift 50 pounds and could frequently lift 25 points; (2) could stand and walk for up to six hours in an eight-hour workday; (3) would not need an assistive device; (3) has no limitations preventing his ability to climb ramps, stair, or uneven terrain; (4) has no limitation on scaffolding or climbing activities; (5) can bend, stoop, kneel, crouch, or crawl on a frequent basis; (6) has no driving or other workplace limitations; and (7) has no limitations on overhead reaching, grasping, fingering, feeling or moving his wrist.  AR 598.

###   C. Vocational Expert's Testimony

At Plaintiff's ALJ hearing, Vocational Expert ("VE") Mark Remas testified as to what jobs Plaintiff could perform given his limitations.  AR 51-54.  He characterized Plaintiff's most recent job as a supervisory customer service role at the sedentary exertion level, with a Specific Vocational Preparation ("SVP") of 6.  AR 51.  For Plaintiff's prior position, Mr. Remas characterized Plaintiff's position as a customer service clerk at the sedentary exertion level, with an SVP of 6.  *Id.*  Next, ALJ Treblin asked Mr. Remas if a hypothetical claimant would be able to perform that past work given limitations similar to Plaintiff's.  AR 51-53.  Mr. Remas responded that ALJ Treblin's posed hypothetical limitations would rule out the past work and would also rule out any application of transferable skills, thus only leaving unskilled work options.  AR 53.  Then, ALJ Treblin

asked Mr. Remas about the types of unskilled jobs to which ALJ Treblin's posed limitations would transfer. *Id.* Mr. Remas offered (1) laundry folder at the light level with an SVP of 2 and 45,000 jobs available; and (2) inspector and hand packager at the light level with an SVP of 2 and 100,000 jobs available. *Id.*

## II. The ALJ Decision

In order to determine whether a claimant meets the definition of disabled, the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 416.920(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the next step. *See* 20 C.F.R. § 416.920(a)(4); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work;" and (5) whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a). Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 416.920(e); *Bray*, 554 F.3d at 1222-23. The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *Bray*, 554 F.3d at 1222.

The ALJ applied the five-step sequential framework to determine that Plaintiff did not have a disability within the meaning of the Social Security Act from October 28, 2019, through the date of the ALJ's decision. AR 33. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset of October 28, 2019. AR 23. At step two, the ALJ determined that Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, osteoporosis, obesity, and depression. AR 23. At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting in particular that he had considered Listings 1.15, 1.16, and 12.04.  AR 24-26 (citing 20 C.F.R. Part 404, Subpart P, App, 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)).

The ALJ further determined that Plaintiff had the RFC to perform light work with certain exertional and postural limitations.  AR 26-27.  The ALJ stated the following regarding Plaintiff's RFC:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently, and he can sit, stand, and walk for six hours each in an eight-hour workday. He can occasionally climb ramps or stairs, but he can never climb ladders, ropes, or scaffolds. In addition, he can occasionally balance, stoop, kneel, crouch, and crawl. He cannot repeatedly operate lower extremity controls with either foot and should avoid concentrated exposure to extreme cold and vibration as well as even moderate exposure to hazards such as unprotected heights and dangerous moving machinery. He is able to understand, remember, apply, and carry out job instructions that can be learned in one to three months, and he can appropriately interact with supervisors, coworkers, and the public. He should not work in teams or on collaborative tasks, and his interactions with the public should be brief, occasional, and superficial. He can respond appropriately to routine work situations, settings, procedures, supervision, and changes in a routine work situation or setting, and he can appropriately use judgment, make decisions, and ask questions.

AR 26-27.

At step four, the ALJ concluded that Plaintiff is not capable of performing his past relevant work as a Customer Service Supervisor or Customer Service Clerk.  AR 32.  At step five, the ALJ determined that Plaintiff could perform various jobs which exist in significant numbers in the national economy.  AR 33.  These included, for example, a laundry folder, parking lot attendant, and hand inspector.  AR 33.

### III.    Legal Standards

#### A. Standard of Review of Magistrate Judge's R&R

The district court's duties in connection with an R&R of a magistrate judge are set

forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b).  The district judge must "make a de novo determination of those portions of the report…to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b).  The district court need not review *de novo* those portions of an R&R to which neither party objects.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*).  "If neither party objects to a magistrate judge's report and recommendation, the District Court is not required to review the magistrate judge's decision under any specified standard of review."  *Lovelace v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00051-TUC-JCH, 2023 WL 4196028, at \*2 (D. Ariz. June 27, 2023) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).  Furthermore, a magistrate judge's R&R "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard."  *Thomas*, 474 U.S. at 154.

## B. Standard of Review of the Commissioner's Decision

A court will set aside the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Berry v. Astrue*, 622 F.3d 1128, 1231 (9th Cir. 2010).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The evidence must be "more than a mere scintilla but less than a preponderance."  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  The court will uphold an ALJ's findings when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999)).

The court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Derosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence is nonconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

## IV.   Analysis

For purposes of the Social Security Act, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Here, the ALJ found that Plaintiff was not disabled. AR 33-34. Plaintiff challenges that finding on two bases: (1) the ALJ failed to properly analyze Plaintiff's subjective symptom testimony; and (2) the ALJ improperly used activities of daily living to attack Plaintiff's credibility in the subjective symptom analysis. ECF No. 12, Joint Motion for Judicial Review.

Based on a review of the record, this Court finds that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### A. The ALJ Improperly Rejected Plaintiff's Subjective Symptom Testimony in his Step Two Analysis

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281. The ALJ determines "credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The decision "must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to…any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* (emphasis in original) (quotations omitted). While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain…it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.2d at 1231. The ALJ "[m]ay consider a range of factors in assessing credibility, including (1) 'ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).

Here, the ALJ found that the record established that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" thus satisfying the first step. AR 28; *see also Lingenfelter*, 504 F.3d at 1036 ("Here, the Commissioner concedes that Lingenfelter met the requirement at step one, by providing

evidence of underlying impairments that could reasonably be expected to produce some degree of the pain and symptoms alleged.").  However, the ALJ rejected Plaintiff's subjective symptom testimony, concluding that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 28.  Therefore, the Court must determine whether the ALJ supplied clear, specific, and convincing reasons for disregarding Plaintiff's subjective symptom testimony.  *See Lingenfelter*, 504 F.3d at 1036 ("We must therefore determine whether the ALJ provided clear and convincing reasons for this adverse credibility finding.").

In his step two analysis, the ALJ appears to reject Plaintiff's subjective symptom testimony for the following two reasons: (1) Plaintiff's medical records "fail to provide strong support for [his] allegations of disabling symptoms and limitations" and (2) Plaintiff testified that he could participate in daily activities "that are inconsistent with his allegations of disabling symptoms and limitations."  AR 28.

The Magistrate Judge concluded that the ALJ did not provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony because: (1) the ALJ failed to identify how the objective medical evidence is inconsistent with Plaintiff's symptom testimony; and (2) the ALJ failed to draw any connection between Plaintiff's reported daily activities and his ability to work at a sustained pace.  ECF No. 13 at 14, 15, 18.  The Magistrate Judge thus found that the ALJ "committed reversible error."  *Id.* at 7.  As described below, the Court accordingly ADOPTS the Magistrate Judge's R&R.

### i.  Medical Record

The ALJ asserts that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations."  AR 28.  Furthermore, the ALJ states that "the medical findings do not support the existence of limitations greater than the above listed residual functional capacity."  *Id.*  Additionally, the ALJ states that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the objective medical evidence and

the other evidence of record." AR 29. This Court agrees with the Magistrate Judge's conclusion that the ALJ merely summarized the "opinion evidence" and failed to identify specific statements from Plaintiff's testimony or function report that were not credible in determining Plaintiff's RFC and rejecting Plaintiff's subjective symptom testimony. ECF No. 13 at 13 (citing AR 28-32).

"An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion, is insufficient…" *Treichler*, 775 F.3d at 1103. "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." *Id.* (citing *Reddick*, 157 F.3d at 722). Furthermore, the ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Meneses v. Berryhill*, No. ED CV 16-1061-PLA, 2017 WL 598759, at *4 (C.D. Cal. Feb. 14, 2017) (citing *Brown-Hunter*, 806 F.3d at 493). The phrase "statements about the intensity, persistence, and limiting effects" does not provide enough information for the Court to understand what specific evidence undermines Plaintiff's subjective symptom allegations. *See Brown-Hunter*, 806 F.3d at 494 ("Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."); *see also* Social Security Ruling (SSR) 16—3p (S.S.A. Oct. 25, 2017) (stating that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

In the ALJ's opinion, the ALJ concluded that "the medical findings do not support the existence of limitations greater than the above listed residual functional capacity. AR 28. After making this statement, the ALJ then cited to one of Plaintiff's medication management sessions from October 2019 where Plaintiff's "mood was depressed and

anxious, and his affect was restricted." AR 29. Next, the ALJ cited to medical visits from October 2020, where doctors concluded that Plaintiff "was alert, and he was negative for psychotic and inappropriate thought content." *Id.* The ALJ went on to cite medical visits by both Dr. Tran and Dr. Pasek, consultative examiners that performed physical and mental status examinations in December 2020. *Id.* The ALJ noted Dr. Tran's conclusions that Plaintiff's "strength was five out of five and his reflexes were plus two," but also stated that a related visit from Plaintiff's primary physician noted that Plaintiff's "shoulders, knees, elbows, wrists, and spine were positive for tenderness." *Id.* The ALJ also noted Dr. Pasek's observations that Plaintiff "was pleasant and cooperative with adequate eye contact and appropriate behavior" and "was alert and fully oriented, and there was no evidence of a psychotic thought process." *Id.* Finally, the ALJ cited to a visit at Kaiser Permanente, in which the doctor noted that Plaintiff's "paraspinal upper and mid back were tender," and his "mood was depressed, and his speech was spontaneous and slowed." AR 30.

While the ALJ attempted to provide specific reasons for rejecting Plaintiff's subjective symptom testimony, the ALJ merely summarized the notes from a variety of Plaintiff's medical visits and did not provide a reason as to why Plaintiff's medical records do not corroborate his testimony. *See* AR 28-32. Even though this Court finds that the ALJ provided a comprehensive and accurate summary of the medical evidence, including information about Plaintiff that both supported and contradicted Plaintiff's subjective symptom testimony, he failed to explain why the medical evaluations provide a clear and convincing reason for rejecting Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Providing a summary of medical evidence…is not the same as providing clear and convincing reasons for finding a claimant's symptom testimony not credible."); *see also Brown-Hunter*, 806 F.3d at ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). For example, the ALJ noted in his decision that Plaintiff was able to heel walk,

toe walk, and tandem walk without difficulty. ECF No. 13 at 15; AR 29. However, nowhere in the ALJ's decision is there any explanation as to how these medical findings are inconsistent with Plaintiff's testimony that he can only walk for around 20 minutes before needing to rest. AR 42. Relying on Dr. Pasek's psychological examination, the ALJ pointed out that Plaintiff was able to be pleasant and maintain appropriate behavior during his examination, but the ALJ failed to point out how this is inconsistent with Plaintiff's testimony that he struggles with depression, bipolar disorder, panic attacks, and agoraphobia. ECF No. 13 at 15; AR 29. Given the ALJ's failure to identify specific statements in Plaintiff's testimony as not credible, the ALJ's summary of the medical record and opinion evidence here are legally insufficient to discount Plaintiff's credibility. *Stone v. Saul*, No. 2:18-cv-02862-CKD, 2020 WL 1332946, at *6 (E.D. Cal. Mar. 23, 2020).

### ii. Daily Activities

The ALJ asserts that Plaintiff has "described daily activities that are inconsistent with his allegations of disabling symptoms and limitations." AR 28. The Magistrate Judge disagrees, finding that "[t]hese activities are not clear and convincing reasons to reject Plaintiff's testimony because the ALJ fails to draw a connection between the activities and an ability to work at a sustained pace." ECF No. 13 at 18. Upon a review of the record, the Court finds that the ALJ too narrowly construed Plaintiff's subjective symptom testimony and erroneously concluded that Plaintiff's symptoms were inconsistent with his activities of daily life.

An ALJ may consider Plaintiff's daily activities in order to make a credibility determination. *See e.g., Diedrich v. Berryhill*, 874 F.3d 634, 648 (9th Cir. 2017); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a factor the ALJ considers in determining the nature and severity of claimant's symptoms). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability."

17

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The Ninth Circuit has stated that "if a claimant is able to spend a *substantial* part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," the ALJ may be justified in disregarding the claimant's symptom testimony. *Fair*, 885 F.2d at 603. In other words, the ALJ may only disregard the Plaintiff's subjective symptom testimony if the level of Plaintiff's daily activities is inconsistent with his claimed limitations. *Reddick*, 157 F.3d at 722.

In the ALJ's opinion, the ALJ referred to various specific activities of daily living, including "attend[ing] to his personal hygiene with some difficulty, prepar[ing] simple meals, and car[ing] for his dog." AR 28. The ALJ also noted that Plaintiff "washes laundry and irons" and "drives, goes to church, shops, and pays bills." *Id.* In providing these descriptions, the ALJ ignores testimony necessary to understand the scope of Plaintiff's activities. *See Garrison v. Colvin,* 759 F.3d 995, 1016 (9th Cir. 2014) (finding ALJ's selective presentation of daily activities was erroneous for failing to note plaintiff had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain). During the hearing, the ALJ asked: "It looks like you would attend church services, is that accurate?" to which Plaintiff responded, "I did, yes. I haven't been able to go for probably close to a year now…[due to] the agoraphobia, being around people. It's really difficult for me to get out of the house. I have attended once, I believe, over the past year." AR 49-50. The ALJ also asked: "Are you able to go grocery shopping?" to which Plaintiff responded, "I have to have someone come and take me to the store for maybe 10-15 minutes max before I have to leave. I just get anxiety and it feels like the walls are closing in and I have to get out of there." AR 45-46.

Furthermore, the ALJ did not mention other relevant testimony, including that Plaintiff's daughter regularly helps him around the house and that he is unable to concentrate on a book for more than a few pages at a time without forgetting what he had just read: "I like to read but the concentration is—it causes a lot of trouble. I'll read two

or three pages and then realize I don't even remember what I just read and I have to go back and reread it." AR 46, 50. The ALJ also did not consider that, although Plaintiff can do some chores, he can only do limited amounts: "I do a little bit of cleaning. I do pay my daughter to come over and help me more with the cleaning. I can do light loads of laundry." AR 46. According to Mr. Gatchell's testimony, Plaintiff "used to do household chores, but now pays others to complete [them] for him, due to pain and fatigue." AR 204. As for being able to conduct activities outside, Plaintiff testified, "I don't get out very, very much. If I do get out, I'll go to a drive through just to grab something to eat periodically. But that's about it. I can't get out of my car to go inside the restaurant…" AR 46.

Thus, because the ALJ did not examine the full scope of Plaintiff's daily activities in his opinion, he too narrowly construed Plaintiff's testimony. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

In addition to not addressing these limitations to Plaintiff's daily activities, the ALJ did not offer specific, clear, and convincing reasons for disregarding them. For example, the ALJ noted that Plaintiff is able to cook for himself, but the ALJ did not specify how this activity contradicts Plaintiff's testimony about the severity of his pain or his ability to focus on activities. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("However, the ALJ did not specifically link the testimony about appellant's daily activity to a conclusion that appellant's excess pain testimony lacked credibility."); *Diedrich*, 874 F.3d at 643 ("That Diedrich could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period."). Additionally, the ALJ noted that Plaintiff "attends to his personal hygiene with some difficulty" and "cares for his dog." ECF No. 13 at 19; AR 28. But the ALJ does not provide any explanation as to why these activities cannot

19

coexist with Plaintiff's testimony that he can "only walk fifty yards before needing to stop and rest for ten to fifteen minutes." *Id.* Here, Plaintiff's strained efforts to participate in daily activities such as reading or cooking, as described in his testimony, are not signs that he is without a disability. Rather, such efforts show that he endeavors to live a normal life in spite of his injuries. Thus, this Court agrees with the Magistrate Judge's analysis that the ALJ did not provide specific, clear, and convincing reasons to discount Plaintiff's testimony based on his daily activities.

### B. Harmless Error

The Court now turns to the analysis of whether the ALJ's errors were harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If an ALJ's error is harmless, his decision will not be reversed. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). In other words, a Court must determine whether the ALJ's conclusion is supported by substantial evidence despite the error. *Blacksher v. Berryhill*, 762 F. App'x 372, 376 (9th Cir. 2019) (citing *Carmickle*, 533 F.3d at 1162). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Molina*, 674 F.3d at 1115.

Here, the record establishes that the ALJ's reasons for their rejection of Plaintiff's subjective symptom testimony are insufficiently, "specific, clear, and convincing." *Smolen*, 80 F.3d at 1281. Consequently, the ALJ's credibility assessment lacks substantial evidence. This error was not harmless, because it impacted the RFC formulated by the ALJ. AR 26.

### V.  Conclusion

For the foregoing reasons, the Court **ADOPTS** the R&R and **REMANDS** this matter to the ALJ for further consideration consistent with this order.

1    Dated:  March 20, 2025

2                                                    Hon. Gonzalo P. Curiel
3                                                    United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28